# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued October 8, 2009          Decided June 29, 2010

No. 08-7140

VANESSA A. MCFADDEN,
APPELLANT

v.

BALLARD SPAHR ANDREWS & INGERSOLL, LLP AND
MARGARET RILEY-JAMISON,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:05-cv-02401-RJL)

*Teresa W. Murray* argued the cause and filed the briefs for appellant.

*Jonathan R. Mook* argued the cause for appellees. With him on the brief was *Bernard J. DiMuro*. *Constantinos G. Panagopoulos* entered an appearance.

Before: GINSBURG, BROWN and GRIFFITH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* GINSBURG.

2

GINSBURG, *Circuit Judge*: Vanessa A. McFadden sued Ballard Spahr Andrews & Ingersoll, LLP, a law firm at which she had worked, and Margaret Riley-Jamison, a Human Resources Manager at the firm, alleging violations of the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.*; Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*; the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*; § 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981; and the District of Columbia Human Rights Act, D.C. Code § 2-1402.11 *et seq.* (DCHRA). The district court granted summary judgment for the defendants on all claims and McFadden appealed.

## I. Background

McFadden started work at Ballard Spahr in 1989 as a legal secretary assigned to Charles Henck, a partner in the firm's tax department. In October 2002 McFadden's husband was diagnosed with cancer. McFadden requested time off to care for him and was granted some leave. She claims Riley-Jamison and others at Ballard Spahr interfered with her ability to take additional leave by misinforming her about her entitlement to leave under the FMLA and by harassing her for taking too much time off. As a result, she claims, she took less time off then she was entitled to take and had to pay her sister to take care of her husband.

In April 2003 McFadden began to have her own health problems. Suffering from Graves' disease, fibromyalgia, depression, and a number of other ailments, she was unable to continue working and took disability leave in October. After the combination of paid and unpaid leave granted by Ballard Spahr expired in May 2004, McFadden contacted the firm in order to inquire about her job status. On a conference call with Riley-Jamison, among others, McFadden was offered a

position doing word processing, but explained she could not do that job because of her difficulty typing. According to McFadden, she asked to be made the receptionist but was told that position was being held open for the permanent receptionist, Betty Ann Hahn, who was also out on medical leave. The firm then terminated McFadden, who is African-American; her replacement was Caucasian.

## II. Analysis

McFadden alleged Ballard Spahr and Riley-Jamison discriminated against her upon the basis of race, in violation of Title VII, § 1981, and the DCHRA; failed to make a reasonable accommodation for her disability, in violation of the ADA and the DCHRA; retaliated against her, in violation of Title VII, the FMLA, the ADA, the DCHRA, and § 1981; and interfered with her right to take leave as provided in the FMLA. The district court granted summary judgment in favor of the defendants on all counts. We review that judgment *de novo*, "bearing in mind that summary judgment is appropriate only if there is no genuine issue as to any material fact and if the moving party is entitled to judgment as a matter of law." *Murphy v. IRS*, 493 F.3d 170, 173 (D.C. Cir. 2007) (internal quotation marks omitted).

### A. Discrimination

McFadden claims Ballard Spahr and Riley-Jamison discriminated against her upon the basis of her race when the firm denied her request to be reassigned to the receptionist position and when it terminated her. We evaluate each allegation using the familiar burden-shifting framework established for Title VII cases in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Howard Univ. v. Green*, 652 A.2d 41, 45 & n.3 (D.C. 1994) (*McDonnell Douglas*

framework applies to cases alleging discrimination in violation of DCHRA); *Metrocare v. Wash. Metro. Area Transit Auth.*, 679 F.2d 922, 925 (D.C. Cir. 1982) (applying *McDonnell Douglas* framework to claim of discrimination under § 1981). Under this framework,

> If the plaintiff establishes a prima facie case, the defendant must come forward with a legitimate, non-discriminatory reason for its actions. ... [I]f the defendant meets its burden of production, the burden shifts back to the plaintiff to persuade the fact finder that the defendant's reason for its action is a mere pretext for discrimination and (thus) that the defendant acted with "discriminatory intent."

*Koger v. Reno*, 98 F.3d 631, 634 (D.C. Cir. 1996).

In keeping with *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008), the district court did not pause to consider whether McFadden had made out a *prima facie* case but instead went on directly to hold Ballard Spahr had provided a legitimate, non-discriminatory reason for each of the challenged actions: Ballard Spahr did not make McFadden its receptionist because that position was occupied by Hahn, who was on medical leave; and it terminated McFadden because she could no longer do her job owing to her medical condition. 580 F. Supp. 2d 99, 109 (2008). The district court then held McFadden had not produced sufficient evidence for a reasonable jury to conclude the reasons offered by the firm were pretextual and granted summary judgment for the defendants.

McFadden argues Ballard Spahr's reason for refusing to give her the job of receptionist was a pretext because at that time, May 2004, Hahn had been on medical leave for several

months and so had no legal entitlement to the position. That is not evidence sufficient for a reasonable jury to infer the firm's refusal to reassign McFadden was racially motivated. The firm claimed not that Hahn was legally entitled to the position at the time of McFadden's request for reassignment but rather that it was holding the position open for her return, a claim supported by its use of a temporary employee to fill in during Hahn's absence and until it became clear in August or September 2004 that Hahn would not be returning.

McFadden suggests the reason given by Ballard Spahr for her termination — that she was unable to perform the essential functions of the legal secretary position — is not itself a legitimate, non-discriminatory reason because it is "on its face, discriminatory on the basis of disability." There is nothing to this; the ADA does not prohibit an employer from terminating an employee who cannot perform the essential functions of her position, albeit with a reasonable accommodation. *See* 42 U.S.C. § 12112(a) (prohibiting discrimination "against a qualified individual"); 42 U.S.C. § 12112(8) (defining "qualified individual" as one "who, with or without reasonable accommodation, can perform the essential functions of the employment position"). McFadden in her brief acknowledges her medical condition rendered her unable to perform the essential functions of a legal secretary: "Disabled and no longer able to type, McFadden became unable to continue working as a Legal Secretary." That is precisely the reason given by Ballard Spahr for terminating her.

McFadden also argues the rationale for Ballard Spahr's decision to terminate her was a pretext because several Caucasian support staff received accommodations not offered to McFadden. The district court found none of these employees was similarly situated to McFadden because each

had a different supervisor and none was unable to perform her job due to a permanent medical condition. 580 F. Supp. 2d at 110. The latter point is dispositive. That Ballard Spahr gave another employee time off in order to recover from a stroke, receive treatment for cancer, travel, or care for a newborn, does not provide the slightest reason to doubt Ballard Spahr's claim to have terminated McFadden because, as a result of her medical conditions, she was permanently unable to work as either a legal secretary or a typist. *See Royall v. Nat'l Ass'n of Letter Carriers*, 548 F.3d 137, 145 (D.C. Cir. 2008) (allegation other employees were treated more favorably could not establish pretext where plaintiff had not shown "all of the relevant aspects of his employment were nearly identical" (internal quotation marks omitted)).

In sum, the district court correctly held McFadden produced insufficient evidence for a reasonable jury to hold pretextual Ballard Spahr's proffered non-discriminatory reasons for not reassigning her and for terminating her. Accordingly, we affirm the decision of the district court granting summary judgment in favor of the defendants with respect to McFadden's claim of discrimination upon the basis of race.

B. Reasonable Accommodation

The ADA "prohibits an employer from discriminating against an 'individual with a disability' who, with 'reasonable accommodation,' can perform the essential functions of the job," *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 393 (2002) (quoting 42 U.S.C. §§ 12112(a) & (b)), and the DCHRA is to like effect, *see Whitbleck v. Vital Signs, Inc.*, 116 F.3d 588, 591 (1997). McFadden claims Ballard Spahr violated the ADA and the DCHRA by refusing to reassign her to the

receptionist position when she could no longer work as a legal secretary.

The district court held reassignment of McFadden to the receptionist position was not a reasonable accommodation for two reasons. First, although the ADA provides "'reasonable accommodation' may include ... reassignment to a vacant position," 42 U.S.C. § 12111(9), the receptionist position was not vacant when McFadden requested reassignment. Second, McFadden could not perform the essential functions of the receptionist position because those functions included punctuality and reliability and "at the time of her termination, [McFadden] was unable to attend work consistently and had no way of predicting whether her illnesses would allow her to attend work on a given day." 580 F. Supp. 2d at 107–08.

McFadden argues the district court erred in concluding the receptionist position was not vacant for the same reason she argues the firm's proffered reason for not reassigning her was a pretext for discrimination, to wit, Hahn's entitlement to leave under the FMLA had expired when McFadden requested the position. As McFadden puts it in her brief, "Hahn had no legal interest in the position." Whether Hahn had a legal interest in the position — under the FMLA or otherwise — is not determinative, however. The word "vacant" has no "specialized meaning" in the ADA. *Barnett*, 535 U.S. at 399. Its meaning "in ordinary English," *id.*, is "not held, filled, or occupied, as a position or office." Webster's New Twentieth Century Dictionary 2014 (2d ed. 1983). McFadden does not deny that at the time she requested reassignment to the receptionist position Hahn, the long-time permanent receptionist, was in the second month of a three-month period of non-FMLA leave, during which the law firm had a temporary employee filling in. McFadden does not claim Ballard Spahr had sought a permanent

replacement for Hahn, had posted a job listing, or had otherwise acted as though it considered the position vacant. Under these circumstances Hahn clearly "held, filled, or occupied" the receptionist position.

McFadden's argument in the alternative that the receptionist position was "soon to be vacant" is a non-starter. McFadden provides no evidence or argument Ballard Spahr did not expect or at least reasonably hope Hahn would recover and return to work when McFadden requested reassignment in May 2004; her implicit suggestion to the contrary is belied by the firm's failure to hire a permanent replacement until it had become clear Hahn would not return in August or September of 2004.

Because there is no genuine dispute about whether the position to which McFadden requested reassignment was vacant, we affirm the decision of the district court granting summary judgment in favor of Ballard Spahr on McFadden's claim the firm failed to provide a reasonable accommodation, in violation of the ADA and the DCHRA. Therefore we need not reach the alternative ground upon which the district court relied. Nor do we address McFadden's argument the firm should have assigned her to the receptionist position "unless or until Hahn came back;" McFadden doubly forfeited that argument by failing to raise it in the district court and in her opening brief on appeal. *See, e.g.*, *Bryant v. Gates*, 532 F.3d 888, 898 (D.C. Cir. 2008) (argument not made before district court is forfeited); *Power Co. of Am., LP v. FERC,* 245 F.3d 839, 845 (D.C. Cir. 2001) (court does not consider arguments first offered in a reply brief).

C. Retaliation

McFadden claims the defendants' denial of her request to be given the position of receptionist and her termination also constituted unlawful retaliation against her for conduct protected by Title VII, the ADA, the FMLA, the DCHRA, and § 1981. The analytical framework for her claim of retaliation is essentially the same as that applicable to a claim of discrimination under Title VII. *See Cones v. Shalala*, 199 F.3d 512, 520–21 (D.C. Cir. 2000) (Title VII); *Woodruff v. Peters*, 482 F.3d 521, 528–29 (D.C. Cir. 2007) (ADA); *Gleklen v. Democratic Cong. Campaign Comm., Inc.*, 199 F.3d 1365, 1367 (D.C. Cir. 2000) (FMLA and DCHRA); *Carney v. Am. Univ.*, 151 F.3d 1090, 1095 (D.C. Cir. 1998) (§ 1981). The district court granted summary judgment for the defendants on this claim for the same reason it had granted summary judgment on her claim of discrimination: McFadden "fail[ed] to show that Ballard Spahr's stated legitimate reason for her termination was a pretext for retaliation." 580 F. Supp. 2d at 110 n.16.

Based upon two statements she recounted in her deposition, McFadden argues a reasonable jury could infer Ballard Spahr denied her request for reassignment and terminated her in order to retaliate for her having requested and taken leave due her under the FMLA, complained about racial discrimination at Ballard Spahr, and requested reassignment. Specifically, McFadden testified that Riley-Jamison said the firm had too many sick people and should hire younger, healthier people and an official in the firm's Human Resources Department told McFadden, when McFadden called the firm to inquire about her job status upon the expiration of her leave, that she should "resign and save everybody the trouble." Neither statement, however, concerned McFadden's exercise or pursuit of protected rights

or otherwise sufficiently suggests retaliatory animus for a reasonable jury to conclude Ballard Spahr's explanations for refusing to reassign and for terminating McFadden were pretexts for retaliation. *See Pardo-Kronemann v. Donovan*, 601 F.3d 599, 611 (D.C. Cir. 2010) (affirming grant of summary judgment against plaintiff notwithstanding statements "reflect[ing] at most a personal opinion or sympathy insufficient for a reasonable jury to conclude [the employer's] explanation is [a] pretext for retaliation" (internal quotation marks omitted)); *Haynes v. Williams*, 392 F.3d 478, 485 (D.C. Cir. 2004) ("evidence that is merely colorable or not significantly probative cannot create a genuine issue of material fact" (internal quotation marks omitted)). Accordingly, we affirm the district court's judgment for the defendants on McFadden's claim for retaliation.

D. Interference with FMLA Rights

McFadden claims the defendants interfered with her rights under the FMLA by misinforming her about the amount of leave to which she was entitled and by pressuring her not to take leave. Her burden is to show both that her employer "interfere[d] with, restrain[ed], or den[ied] the exercise of or the attempt to exercise, any right provided" by the FMLA, 29 U.S.C. § 2615(a)(1), and that she was prejudiced thereby. *See Ragsdale v. Wolverine Worldwide, Inc.*, 535 U.S. 81, 89 (2002) (discussing elements).

In granting the defendants' motion for summary judgment on this claim, the district court assumed *arguendo* that Ballard Spahr violated the FMLA, 580 F. Supp. 2d at 105, but held no reasonable jury could find McFadden was prejudiced by the alleged violation. The court gave three reasons: (1) McFadden "does not [claim] that Ballard Spahr ever denied her leave when she requested it," (2) McFadden

produced insufficient evidence in support of her contention she paid her sister to care for her ailing husband, and (3) McFadden does not "allege a causal relationship between Ballard Spahr's conduct and the payments." *Id.* at 106.

None of the grounds relied upon by the district court supports its decision. The first does not support summary judgment because McFadden can succeed on her claim under the FMLA without showing Ballard Spahr denied her any leave she requested; she need only show the employer "interfere[d] with ... the exercise of" her FMLA rights, 29 U.S.C. § 2615(a)(1), and that she suffered "monetary losses ... as a direct result of the violation, such as the cost of providing care," 29 U.S.C. § 2617(a)(1)(A)(i)(II).

As for the second ground, a reasonable jury could find McFadden paid her sister to care for her husband upon the basis of McFadden's uncontroverted declaration to that effect. Contrary to the reasoning of the district court, the failure of McFadden's sister to mention in her short sworn statement that McFadden paid her is not in itself a reason to doubt McFadden's deposition testimony. Finally, the third ground does not support summary judgment because a reasonable jury that found McFadden paid her sister to care for her husband could infer McFadden did so because Ballard Spahr led her to believe she could not take time off to care for him herself. The causal relationship is implicit in McFadden's allegation that, after Riley-Jamison said McFadden's need to miss work on days when her husband had medical appointments was "going to be a problem," in order "[t]o maintain her job, Ms. McFadden arranged for her sister to care for [her] husband on [those days] and reported to work ... as instructed."

Because none of the grounds upon which the district court relied supports its conclusion that no reasonable jury could find McFadden was prejudiced by the purported violation of the FMLA, we reverse the judgment of the district court granting summary judgment for the defendants on McFadden's claim under that statute. Ballard Spahr suggests alternative grounds for affirming the judgment in this respect but, because they implicate disputed issues of fact and law, they are better addressed by the district court in the first instance.

## III. Conclusion

We reverse the judgment of the district court with respect to McFadden's claim of interference in violation of the FMLA and remand that claim for further proceedings because there is a genuine issue of material fact as to whether McFadden was prejudiced by the alleged interference.[*] We affirm the judgment for the defendants with respect to McFadden's other claims.

*So ordered.*

---

[*] The district court did not reach the question whether Riley-Jamison can be held personally liable for any of the firm's actions. 580 F. Supp. 2d at 110. We leave what remains of that issue for the district court to decide in the first instance.